**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**GRIMES CONTRACTING, INC.,**
a Florida Corporation and
**JEFFREY DYSON,** an individual,

    Plaintiffs,

vs.                                               Case No.: 3:08-cv-965-J-16MCR

**GRIMES UTILITIES, INC.,** a
Florida corporation, and
**RICHARD S. GRIMES,** an individual,

    Defendants.
_____/

## ORDER

Plaintiffs seek a preliminary injunction and assert a trademark infringement and unfair competition claim under 15 U.S.C. § 1125(a) (the "Lanham Act") and under Florida common law. Plaintiffs assert that Defendants are unlawfully using "service marks" that are confusingly similar to those used by Plaintiffs. The Court held a hearing (the "Hearing") on a Motion for Preliminary Injunction (Dkt. 7) filed by Grimes Contracting, Inc. ("Grimes Contracting"). During the Hearing, the Court considered the evidence and testimony presented and considered Defendants' Grimes Utilities, Inc. ("Grimes Utilities") and Richard S. Grimes' ("Mr. Grimes") Motion to Strike Portions of Affidavits (the "Motion to Strike," Dkt. 34).

Plaintiffs' two-count complaint seeks injunctive relief and monetary damages against Defendants for Grimes Utilities' use of the marks "GRIMES" and "GRIMES UTILITIES, INC." (the "Grimes Utilities Marks") and any other confusingly similar marks used in violation of

1

Grimes Contracting's pre-existing rights in the marks "GRIMES" and "GRIMES CONTRACTING, INC." (the "Grimes Contracting Marks").  Plaintiffs claim that the Grimes Contracting Marks are valid and that Grimes Utilities use of the "competing" Grimes Utilities Marks have caused actual consumer confusion and have injured Grimes Contracting's business and goodwill.

Defendants raise procedural and substantive arguments in opposition to the Motion for Preliminary Injunction.  Defendants claim that the Court lacks subject matter jurisdiction to hear this case, that Plaintiffs cannot prove "ownership" of the Grimes Contracting Marks, and that Plaintiffs are not entitled to injunctive relief pursuant to the equitable doctrine of unclean hands.  Further, Defendants claim that Plaintiffs' evidence does not support the finding the Grimes Utilities Marks have created consumer confusion.     After consideration of the Complaint for injunctive relief (Dkt. 1), the Motion for Preliminary Injunction, memoranda, affidavits and other written submissions, and all relevant oppositions, the Motion for Preliminary Injunction (Dkt. 7) will be **DENIED** and the Motion to Strike will be **DENIED AS MOOT** (Dkt. 34).

## FACTUAL BACKGROUND

On January 1, 1995, Mr. Grimes and Jeffrey Dyson ("Mr. Dyson") formed Grimes Contracting.  Mr. Dyson and Mr. Grimes were then, and remain today, co-owners of Grimes Contracting, each contributing $6,000.00 as an initial capital investment.  Until he resigned in August 2008, Mr. Grimes served as President and Treasurer of Grimes Contracting, as well as an employee and director.

Grimes Contracting provides "underground utilities" services and its primary business is installing, repairing, and realigning underground utilities, such as water and sewer pipes and

2

conduits, storm drains, and communications conduits (the "Services"). The underground utilities industry is a niche of the construction industry.

According to the parties, the underground utilities business is very "close-knit" in Clay, Duval, and St. John's Counties in Florida (the "Geographic Area"). Underground utilities subcontractors in the Geographic Area rely heavily on word-of-mouth and face-to-face advertising and referrals. The parties agree that underground utilities contractors do not typically advertise through "traditional" media, such as television or radio, because these traditional methods are not effective or efficient mediums to reach the intended audience. Instead, underground utilities subcontractors typically display their service marks, trade names and logos on vehicles and equipment used at job sites, on job apparel (hats, t-shirts, jackets, etc.), or through local sponsorship of community and charitable events, such as golf tournaments or children's recreational children's sports leagues.

Since its formation, Grimes Contracting has been continually offering its Services throughout the Geographic Area under the Grimes Contracting Marks and in other various forms, logos and adaptations that include, without limitation, those identified in the Motion for Preliminary Injunction. (Dkt. 7 at p. 3). Grimes Contracting advertises through the non-traditional methods consistent with those outlined above and estimates that since 1999 it has spent $47,289.00 on its advertising efforts. (Dyson. Aff. ¶ 36; Ex. 6).

Mr. Grimes is currently the owner and principal of Grimes Utilities. According to Plaintiffs, Mr. Grimes formed Grimes Utilities while still employed at Grimes Contracting. Like Grimes Contracting, Grimes Utilities performs underground utilities work. Grimes Utilities performs its services under the Grimes Utilities Marks and uses various logos and adaptations thereof. Grimes Utilities currently employs several former employees of Grimes Contracting.

ANALYSIS

A plaintiff is entitled to a preliminary injunction if the plaintiff demonstrates that (1) substantial likelihood of success on the merits exists, (2) a substantial threat of irreparable injury exists if an injunction does not issue, (3) the threatened injury to the plaintiffs outweighs any harm that might result to the defendants, and (4) the injunction, if issued, will not be adverse to the public interest. Int'l Cosmetics Exch., Inc. v. Gepardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002).

In a service mark infringement action brought pursuant to the Lanham Act, as well as claims for service mark infringement and unfair competition under Florida common law, the plaintiff must show that its mark is valid and that the defendant's use of the mark is likely to cause confusion. 15 U.S.C. § 1125(a); Dieter v. B&H Indus. of S.W. Fla., Inc., 880 F.2d 322, 326 (11th Cir. 1989). A service mark is identical to a trademark in all respects except that it indicates the origin of services, as opposed to goods from those manufactured or sold by others. Univ. of Fla. v. KBP, Inc., 89 F.3d 773, 776 n.4 (11th Cir. 1996). A trademark is "any word, name, symbol or device, or any combination thereof used by a person" or entity to "identify and distinguish his or her goods . . . from those manufactured or sold by others . . . ." 15 U.S.C. § 1127.

"Ownership of a mark must first be considered before an inquiry is made into likelihood of confusion." Ambrit, Inc. v. Kraft, 812 F.2d 1531 (11th Cir. 1986). The existence of a registered mark is "*prima facie* evidence of. . .the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark. . . ." Worsham Sprinkler v. Wes Worsham Fire Protection, 419 F.Supp.2d 861, 867 (E.D. Va. 2006) (internal citations omitted). However, neither party disputes that the Grimes Contracting Marks are not federally registered. Thus,

Plaintiffs must demonstrate ownership of the Grimes Contracting Marks before the court considers whether the Defendants' conduct creates confusion.

**1.      Subject Matter Jurisdiction**

Because the presence of subject matter jurisdiction determines whether the Court can consider any substantive argument in this matter, the court first considers Defendants' argument that the Court lacks subject matter jurisdiction. Defendants claim that this case must be dismissed because purely intrastate commerce disputes are not subject to regulation under the Lanham Act. Defendants claim that exhibits to Mr. Dyson's Affidavit detail solely intrastate business activities by Grimes Contracting. Specifically, Defendants contest Plaintiffs' claim that Grimes Contracting conducts any "interstate" business. Mr. Grimes submits that Grimes Contracting has not performed any work outside of Florida since the late 1990s and that Grimes Contracting does not advertise or solicit work from states outside of Florida. (Grimes Aff. ¶ 47).

However, during the Hearing, Plaintiffs introduced evidence of Grimes Contracting's interstate activities including business conducted in Camden County and Glynn County, Georgia; "recent" services performed in May 2006 for R.B. Baker, a Georgia corporation; and sponsorship of a golf tournament in Savannah, Georgia in 2008. At this stage of the litigation, the interstate activities detailed by Grimes Contracting during the Hearing and in Mr. Dyson's Affidavit, although "skimpy" and offering little detail, are sufficient to withstand Defendants' challenge to the Court's subject matter jurisdiction. A motion to dismiss or for summary judgment would provide a more appropriate opportunity to address Defendants' contentions about subject matter jurisdiction.

### 2. "Unclean Hands"

Defendants claim that the doctrine of unclean hands also bars injunctive relief in this case. The Courts finds all three "unclean hands" arguments unpersuasive.

First, Defendants claim that when a party seeks to protect its interest in a trademark, that trademark must not contain any item of "falsehood." Immuno Vital, Inc. v. Golden Sun, Inc., 49 F. Supp. 2d 1344, 1358 (S.D. Fla. 1997). Defendants claim that Grimes Contracting was founded based upon the efforts and reputation of Mr. Grimes. Defendants further claim that the trade name Plaintiffs seek to protect, GRIMES CONTRACTING, INC., contains a material misrepresentation because "the same implies that the work performed by the company will be managed by Grimes." (Dkt. 16, pp. 10-11). This argument is unpersuasive because it is supported with the, as of yet, unproven, yet compelling assertion by Defendants that customers of Grimes Contracting assume that Mr. Grimes will manage any and all work performed by Grimes Contracting.

Defendants' second and third arguments are unpersuasive for the same reason. Defendants claim that prior to August 2008, Mr. Dyson attempted to "devalue" Grimes Contracting. Defendants claim that neither Mr. Dyson nor Grimes Contracting has taken any action with respect to the numerous other uses of "Grimes" in trade names in Jacksonville and the Geographic Area.

As the court found in Tancogne v. Tomjai Enterprises Corp., 408 F.Supp.2d 1237, 1254 (S.D. Fla. 2005), "unclean hands cannot be asserted against a party seeking relief as a free-floating defense unconnected to the conduct at issue. The conduct must be directly related to Plaintiffs' claim against Defendants." Mr. Dyson's alleged "devaluation" of Grimes Contracting is not directly related to this infringement case. Mr. Dyson's alleged action or inaction regarding

the numerous other uses of "Grimes" is also "unconnected" to this action because each case of infringement is discreet and presents its own unique set of considerations.

**3.     Ownership of the Grimes Contracting Marks**

Before consideration of whether the Defendants' conduct creates a "likelihood of confusion," the Court must determine whether Plaintiffs have demonstrated ownership of the Grimes Contracting Marks. Defendants claim that neither the Grimes Contracting nor Grimes Utilities Marks are registered service marks, and thus, neither party can claim nationwide protection under the Lanham Act. Defendants further claim that even if the Grimes Contracting Marks are considered service marks, Plaintiffs cannot establish the requisite "ownership" of the Grimes Contracting Marks.

Plaintiffs respond that the Grimes Contracting Marks are valid under both the Lanham Act and Florida law based upon the acquired distinctiveness resulting from nearly fourteen years of Plaintiffs' continuous and exclusive use in combination with extensive advertising and promotion of the Grimes Contracting Marks and market and customer recognition. Plaintiffs claim that Grimes Contracting acquired valid common law rights in its marks by being the first and only user of the Grimes Contracting Marks in connection with the Services throughout the Geographic Area since 1995. Plaintiffs further claim that, except for an abandoned attempt to start Grimes Construction, Inc., a competing business in 1999, Mr. Grimes never objected to or claimed any rights to the use of his last name. (Dyson Aff. ¶¶ 22& 40). Finally, Plaintiffs claim that the Grimes Contracting Marks have acquired secondary meaning in the Geographic Area's underground utilities industry and are entitled to protection as a direct result of their long, consistent, and widespread promotion and use by Grimes Contracting.

7

Section 43(a) of the Lanham Act protects against trademark, service mark, and trademark infringement even though the name has not been federally registered. Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990). "At common law, trademark ownership is acquired by actual use of the mark in a given marketplace." Id. (internal citations omitted). The mark's owner acquires "both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark." Id.

### A. "Distinctiveness"

The threshold inquiry of "protectability" is whether a mark is distinctive enough to warrant protection under the Lanham Act. Investcorp. Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1522 (11th Cir. 1991). "Distinctiveness" refers to a mark's capacity to distinguish in the marketplace the source of goods or services offered in connection with the mark. Welding Serv. Inc. v. Forman, 509 F.3d 1351, 1357 (11th Cir. 2007). Four different categories of "distinctiveness" exist, each with a different degree of identification and each given a different level of protection. Id. They are from strongest to weakest: (1) arbitrary of fanciful; (2) suggestive; (3) descriptive; and (4) generic. Am. Television v. Am. Commc'ns, 810 F.2d 1546, 1548 (11th Cir. 1985). Distinctiveness of a mark may be increased or acquired "by virtue of long use and extensive promotion." E. Remy Martin v. Shaw-Ross Int'l Imp., Inc., 756 F.2d 1525, 1533 (11th Cir. 1985).

Plaintiffs claim that in the context of the Services and Geographic Area the Grimes Contracting Marks are "arbitrary and fanciful" or at a minimum, "suggestive" marks, both of which are usually considered strong marks. Defendants do not contest this assertion, instead they claim that the Grimes Contracting Marks have not acquired the requisite "secondary meaning."

### B.     Secondary Meaning

The parties acknowledge that because "Grimes" is a surname, the Grimes Contracting Marks are entitled to protection only upon proof they have acquired a secondary meaning. Conagra, Inc. v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984).

Under trademark law, there is no absolute right to use one's own personal name when that use would be confusingly similar to an established use of a mark that the public has come to associate with another source.  See Paul Frank Industries, Inc. v. Sunich, 502 F.Supp.2d 1094, 1094 (C.D. Cal. 2007).  However, courts are reluctant to forbid a person from using his or her own name.  This is particularly true where the individual, "has spent his entire mature life working in the relevant business, and as a result possesses extraordinary experience, skill and a desire to work in his field." Id. at 1098 (internal citations omitted).  Additionally, when an individual has a "well-known reputation, preventing that individual from using his name in any commercial or business context deprives him of the ability to 'communicat[e] useful information to the consuming public.'" Id. (internal citations omitted). In order to enjoin a person from use of his or her personal name, a court must find that the name has acquired a secondary meaning. . . .That is to say, the name needs to have reached a level of recognition such that the consuming public would associate the name with a particular source." Id. (internal citations omitted).

The proof of secondary meaning entails vigorous evidentiary requirements. Worsham Sprinkler, 419 F.Supp.2d at 869.  In the Eleventh Circuit, the secondary meaning of a surname is determined by considering four factors: (1) the length and manner of use of the mark; (2) the nature and extent of advertising and promotion; (3) the plaintiff's efforts to promote in the public's mind a conscious connection between the name and the goods or services; and (4) the extent to which the public actually identifies the name with the plaintiff's goods or services."

Conagra, 743 F.2d at 1513 (11th Cir. 1984). A plaintiff must demonstrate secondary meaning among present or prospective customers in the relevant trade area before the alleged infringer entered the market. Worsham Sprinkler, 419 F.Supp.2d at 869.

"Survey" evidence (or direct customer testimonials) as opposed to "circumstantial" evidence is the most "direct and persuasive way of establishing secondary meaning." Worsham Sprinkler, 419 F.Supp.2d at 869 (internal citations omitted). However, Plaintiffs failed to provide survey evidence, thus the circumstantial evidence that can be gleaned from the record evidence must suffice. "Circumstantial evidence includes proof of the exclusivity and length of use of the mark[s], advertising modes and expenses, unsolicited media coverage, revenues and intentional copying by others. Worsham Sprinkler, 419 F.Supp.2d at 870 (internal citations omitted). The only circumstantial evidence provided in the record concerns the length of time and manner in which Plaintiffs have used the Grimes Contracting Marks.

**The length and manner of use of the mark**

Defendants fail to dispute that the Grimes Contracting Marks have been in use in various forms for almost fourteen years (from 1995 until the present) in the Geographic Area in connection with the Services. However, Defendants note that at least eleven other uses of "Grimes" exists in the names of businesses located within Jacksonville, Florida, which is included in the Geographic Area. However, those eleven businesses incorporating "Grimes" into some part of their business name are not in the business of providing underground utilities. Thus, regarding the Services offered in the Geographic Area, the "length and exclusivity" factor favors Plaintiffs.

**The nature and extent of advertising and promotion**

Advertising expenditures provide circumstantial evidence of secondary meaning, because "if extensive, they may help establish the inference that consumers associate a trade mark or trade name with a specific company." Id. A plaintiff must present evidence that the advertising had the desired effect of creating a secondary meaning in a plaintiff's trade names and marks. "Although it is true that advertising is a relevant factor in determining whether a mark has acquired a secondary meaning, it is the effect of such advertising that is important, not its extent. To be effective in this respect, the advertising must cause the public to equate the mark with the source product." Id., citing to Co-Rect Products, Inc. v. Marvy! Advetising Photography, Inc., 780 F.2d 1324, 1332 (8th Cir. 1985).

Grimes Contracting made over $79 million dollars in revenues from 1999-2007. During this same time period Grimes Contracting spent only $47,289.00 on advertising. Grimes Contracting's advertising expenditures are clearly *de minimus* when compared to the revenue it generated; however Plaintiffs offer evidence of extensive "non-traditional" advertising in the Geographic Area – use of the Grimes Contracting Marks on trucks, at sponsorship of sporting and charitable events, etc. Plaintiffs claim that over the fourteen years, the relevant public for underground utility services has repeatedly and consistently been exposed to Grimes Contracting Marks through business cards, letterhead, bid proposals, job-site vehicles and apparel worn by its forty employees. Plaintiffs further claim that employees of Grimes Contracting routinely shorten references to "Grimes Contracting, Inc." to Grimes and thus, as a direct result of the above efforts Grimes Contracting has "earned a favorable business reputation and developed goodwill under the Grimes [Contracting Marks." (Dkt. 7 at p. 11). Plaintiffs conclude that "[i]n light of the limited and close-knit utilities contracting services in the Geographic Area, Grimes

Contracting has expended relatively substantial amounts and made extensive efforts to promote its services marks for nearly fourteen years." (Dkt. 7 at p. 12).

**The plaintiff's efforts to promote in the public's mind a conscious connection between the name and the goods or services**

Mr. Grimes contends that the value in the name "Grimes" resides with his own, personal reputation built several years before he and Mr. Dyson became business partners and continued after the formation of Grimes Contracting through Mr. Grimes' personal relationships with customers of Grimes Contracting. Mr.Grimes claims that his last name is not a service mark to identify "Grimes Contracting, Inc.," but it is the way people have referred to him well before his association with Mr. Dyson. Mr. Grimes further claims that Grimes Contracting is identified in the community as Grimes Contracting, Inc. – that its full name appears on contracts, letterhead and business cards and in the phonebook.

**The extent to which the public actually identifies the name with the plaintiff's goods or services**

It is unclear from the evidence presented above, whether "Grimes" standing alone is associated with the "Grimes Contracting" in the relevant community. Even accepting Plaintiffs' contention that "Grimes" is understood to mean "Grimes Contracting," it remains unclear whether it is Plaintiffs' advertisement and use of the Grimes Contracting Marks as a part of that advertising or Grimes Contracting's reputation for providing quality, dependable service alone is the reason for the recognition afforded to Grimes Contracting in the Geographic Area.

It is also unclear the exact extent to which Mr. Grimes and his personal reputation are responsible for any correlation. Based on the evidence presented, it appears that since its formation in 1995, Plaintiffs' have been attempting to capitalize on Mr. Grimes' reputation, expertise and goodwill within the Geographic Area to their benefit.

It appears that in their rush to provide evidence about the confusion Defendants use of the Grimes Utilities Marks is causing in the Geographic Area, Plaintiffs failed to produce enough evidence to satisfy the Court that they are the owners of the Grimes Contracting Marks and as such entitled to protection afforded to them by the Lanham Act. Because Plaintiffs have failed to demonstrate "ownership" sufficient to support its Motion for Preliminary Injunction, the Court need not consider the "likelihood of confusion."

## CONCLUSION

For the reasons set forth above, **it is ORDERED** that the Motion for Preliminary Injunction (Dkt. 7) is **DENIED** because Plaintiffs have failed to demonstrate entitlement to preliminary injunctive relief. It is further **ORDERED** the Motion to Strike (Dkt. 34) is **DENIED as MOOT**. Even if the Court considered all of the statements that Defendants asked us to strike, most of the statements were offered in support of Plaintiffs' contention that a preliminary injunction is necessary because of "sufficient likelihood of confusion." Because it was not necessary to reach the merits of Plaintiffs' "confusion" arguments, the relief requested in the Motion to Strike (Dkt. 34) is moot.

**DONE and ORDERED** from Chambers in Jacksonville, Florida on this 13th day of January, 2009.

Copies to: Counsel of Record

JOHN H. MOORE II
United States District Judge